NOT FOR PUBLICATION

RECEIVED
SEP 25 2017
AT 8:30_____M
WILLIAM T. WALSH
CLERK

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| FRED L. SEEMAN, *individually, and as Administrator of the Estate of* HELENE K. SEEMAN, and CURTIS JAY ZUKER SEEMAN,<br><br>Plaintiffs,<br><br>v.<br><br>AMY LOCANE and MARK C. BOVENIZER, CARLOS SAGEBIEN, and RACHEL SAGEBIEN,<br><br>Defendants. | Civ. No. 10-6597<br><br>**OPINION** |
| AMY LOCANE and MARK C. BOVENIZER,<br><br>Defendants/Third Party Plaintiffs,<br><br>v.<br><br>MAUREEN RUCKELSHAUS,<br><br>Third Party Defendant. | |
| CARLOS SAGEBIEN and RACHEL SAGEBIEN,<br><br>Defendants/Third Party Plaintiffs,<br><br>v.<br><br>MAUREEN RUCKELSHAUS and OFF-BROADSTREET THEATRE,<br><br>Third Party Defendants. | |

THOMPSON, U.S.D.J.

1

## INTRODUCTION

This matter comes before the Court on three motions, two for summary judgment and one for partial summary judgment. First, Third Party Defendant Off-Broadstreet Theatre moves for summary judgment on the social host liability claims against it. (ECF No. 180.) Defendants and Third Party Plaintiffs Carlos and Rachel Sagebien ("Sagebien Defendants") oppose. (ECF No. 187.) Second, the Sagebien Defendants move for partial summary judgment on Plaintiffs' claim for punitive damages. (ECF No. 181.) Plaintiffs Fred Seeman, individually and on behalf of the estate of Helene Seeman, and Curtis Seeman (collectively "Plaintiffs") oppose. (ECF No. 193.) Third, Defendant and Third Party Plaintiff Mark Bovenizer ("Defendant Bovenizer") moves for summary judgment on claims for negligent entrustment of his vehicle, claims sounding in agency, and Plaintiffs' claim for punitive damages. (ECF No. 182.) The Sagebien Defendants (ECF No. 186) and Plaintiffs (ECF No. 192) oppose. The Court has decided the motions after considering the parties' written submissions without oral argument pursuant to Local Civil Rule 78.1(b). For the following reasons, all three motions are denied.

## BACKGROUND

This matter concerns a fatal motor vehicle accident which occurred on June 27, 2010 in Montgomery Township, New Jersey. (Am. Compl. ¶¶ 65–67, ECF No. 21.) On December 20, 2010, Plaintiffs filed a Complaint against Defendant Amy Locane, alleging, among other claims, negligence and wrongful death, and her then-husband Defendant Mark Bovenizer, alleging negligent entrustment of his vehicle. (ECF No. 1.) The case was then stayed pending resolution of criminal charges against Defendant Locane arising from the same vehicular incident. (ECF Nos. 17–20.) Plaintiffs filed an Amended Complaint against Defendants Locane, Bovenizer, and the Sagebien Defendants on May 15, 2012. (ECF No. 21.)

2

The stay was lifted on December 19, 2012. (ECF No. 33.) Defendants Locane and Bovenizer then answered the Amended Complaint on January 4, 2013, also filing a Third Party Complaint against Maureen Ruckelshaus, a crossclaim against the Sagebien Defendants, and a counterclaim against Plaintiff Fred Seeman. On January 24, 2013, the Sagebien Defendants likewise answered and filed Third Party Complaints against Maureen Ruckelshaus and Off-Broadstreet Theatre, a crossclaim against Defendants Locane and Bovenizer, and a counterclaim against Plaintiff Fred Seeman. (ECF No. 38.) On February 11, 2013, Third Party Defendant Ruckelshaus answered, filing counterclaims and crossclaims against all Defendants. (ECF Nos. 44, 46.) On February 25, 2013, Third Party Defendant Off-Broadstreet Theatre answered, filing counterclaims against the Sagebien Defendants and crossclaims against all Defendants. (ECF No. 47.) The Sagebien Defendants answered all counterclaims on March 7, 2013 (ECF Nos. 49, 50), and Plaintiffs answered all counterclaims on April 5, 2013 (ECF Nos. 58, 59). For the next four years, all parties engaged in discovery.

The following facts are undisputed to the extent that they accurately reflect testimony and materials in the record, but not necessarily as to the credibility or admissibility of such statements. On the afternoon of June 27, 2010, Defendant Locane performed in a play at the Off-Broadstreet Theatre. (Third Party Def. Off-Broadstreet Theatre's Statement of Undisputed Material Facts [hereinafter OBT SOMF] ¶ 12, ECF No. 180-3.) After the play, Robert and Julia Thick, owners and operators of Off-Broadstreet Theatre, provided food and drinks for the cast and crew, including four bottles of wine. (*Id.* ¶¶ 11, 15.) Tom Stevenson, one of the play's participants, provided beer. (*Id.* ¶ 16.) By their own accounts, neither Robert nor Julia Thick believed Defendant Locane to be intoxicated during the course of the play or cast party. (*Id.* ¶¶ 18–19.) Robert Thick had a glass of red wine with Defendant Locane at the cast party. (*Id.*

3

¶ 20.) Tom Stevenson observed Defendant Locane have at least one more glass of wine and taste a few beers. (*Id.* ¶ 25.) Individuals involved in the play who were deposed or testified stated that they did not detect that Defendant Locane was intoxicated during or after the performance, although others also saw her have a glass of white wine. (*Id.* ¶¶ 19, 22–28.) Defendant Locane admitted in her own testimony that she had two cups of wine and part of a third, as well as a sip of the beer. (*Id.* ¶ 29.) Defendant Locane also took Zoloft around 6:00 PM, and left the cast party around 7:10 PM. (*Id.* ¶ 33.) She denies being intoxicated upon leaving the theater. (*Id.* ¶ 30.) Off-Broadstreet Theatre and the Sagebien Defendants produced expert reports which could lead to contrary inferences as to whether Defendant Locane was intoxicated upon leaving the cast party. (*Id.* ¶¶ 33–34; Sagebien Defs.' Suppl. Statement of Facts ¶¶ 1–4, ECF No. 187.)

On the day of the accident, the Sagebien Defendants hosted a barbecue at their home. (Sagebien Defs.' Statement of Undisputed Material Facts [hereinafter Sagebien SOMF] ¶ 8, ECF No. 181-9.) Rachel Sagebien testified that about ten couples and their young children attended. (*Id.* ¶ 10.) Beverages were available for guests to serve themselves, including a case of beer and bottles of wine in coolers on the backyard patio. (*Id.* ¶¶ 12–13.) The barbecue began around 5:00 or 5:30 PM. (*Id.* ¶ 14.) Defendant Bovenizer arrived around 5:00 PM, before Defendant Locane, with their two children. (Pls.' Suppl. Statement of Facts in Resp. to Sagebien Defs. [hereinafter Pls.' SSF1] ¶ 15, ECF No. 193.) After leaving the cast party at Off-Broadstreet Theatre, Defendant Locane arrived at the barbecue around 7:20 or 7:30 PM. (Sagebien SOMF ¶¶ 17, 22.) She drove a 2007 Chevrolet Tahoe owned by Defendant Bovenizer. (Pls.' Suppl. Statement of Facts in Resp. to Def. Bovenizer [hereinafter Pls.' SSF2] ¶¶ 2–4, ECF No. 192.) Defendant Locane remained at the Sagebien barbecue for about an hour or an hour and a half. (*Id.* ¶ 23.)

Defendant Locane testified that she drank about two or three cups of wine at the barbecue. (*Id.* ¶ 25.) She admits to drinking wine the entire time she was there. (Pls.' SSF1 ¶ 26.) During the barbecue Defendant Locane seemed more animated that usual to Defendant Carlos Sagebien. (*Id.* ¶ 28.) He observed Defendant Locane trip on one of her children as they were trying to cling onto her leg. (*Id.* ¶ 27; Pls.' SSF1, Ex. H at 7, ECF No. 193-8.)[1] He testified that she got tangled and fell over. (Pls.' SSF1, Ex. H at 7.) At the time, she was holding a glass of white wine. (*Id.*) It seemed to him "like she kind of giggled about it rather than take care of her kid." (*Id.* at 8.)

While sitting at a patio table with Defendant Bovenizer, Defendant Carlos Sagebien also witnessed Defendant Locane yell an expletive within earshot of children, and noted that she did not appear to be appropriately sorry that she had cursed within earshot of the children. (Pls.' SSF1 ¶¶ 28–30.) By this point it became clear to Defendant Carlos Sagebien that Defendant Locane was under the influence of alcohol. (*Id.* ¶ 31.) During the barbecue, Defendant Locane kept repeating a story to Defendant Rachel Sagebien about a shirt Defendant Locane had purchased for her. (*Id.* ¶ 32.) At that point, Defendant Rachel Sagebien believed Defendant Locane was intoxicated. (*Id.* ¶¶ 32, 35.) Defendant Bovenizer testified that he did not observe Defendant Locane consume any alcohol at the barbecue or pour herself a drink (Def. Bovenizer's Statement of Facts [hereinafter Bovenizer SOMF] ¶ 10, ECF No. 182-1), and that none of the barbecue attendees expressed to him a belief that Defendant Locane was intoxicated or any concern about her ability to drive (*id.* ¶ 11). Defendant Bovenizer testified that he did not know

---

[1] The Sagebien Defendants dispute Plaintiffs' representation of this fact. (*See* Sagebien Defs.' Resp. to Pls.' SSF1 ¶ 27, ECF No. 196.) The Court's factual description is based on its review of statements appearing in the Voluntary Statement of Carlos Sagebien, appended as Plaintiffs' Exhibit H.

5

Defendant Locane was intoxicated (*id.* ¶ 15), which Defendant Locane disputed in her own testimony (*see, e.g.*, Sagebien Resp. to Bovenizer SOMF ¶ 15, ECF No. 186).

Both Sagebien Defendants admitted that they would have felt uncomfortable with Defendant Locane driving on the roadway based on the condition she was in when leaving their house. (Pls.' SSF1 ¶ 39.) They were aware that Defendant Bovenizer had arrived at the barbecue about two hours prior to Defendant Locane. (Pls.' SSF1 ¶¶ 15, 17.) The Sagebien Defendants testified that they believed Defendant Bovenzier would be driving Defendant Locane home. (*See* Sagebien SOMF, Ex. C, Tr. 117:20–23; *see also* Sagebien SOMF, Ex. D, Tr. 36:2–3, ECF No. 181-5.) However, neither Sagebien Defendant commented to anyone at the barbecue about their belief that Defendant Locane was intoxicated (Pls.' SSF1 ¶¶ 42–46), nor did they directly confirm with Defendants Bovenizer or Locane how she was getting home (*id.* ¶¶ 47–49; *see also* Pls.' SSF1, Ex. K, Tr. 129:6–23, ECF No. 193-11).

Defendant Bovenizer testified that around 8:30 or 8:45 PM, he and Defendant Locane got ready to leave the barbecue. (Sagebien SOMF ¶ 29.) Before leaving, Defendant Locane used the bathroom right by the front door of the Sagebien residence. (*Id.* ¶ 31.) When Defendant Locane came out of the bathroom, Defendant Bovenizer had left with their daughters. (Sagebien SOMF, Ex. E, Tr. 197:1–20, ECF No. 181-5.) Defendant Locane testified that she believed they would all leave together and that her husband would drive them all home. (*Id.* tr. 264:13–24, 265:1–10, 266:16–22.) Defendant Locane admitted to being intoxicated during the period she was at the Sagebien Defendants' house. (Pls.' SSF2 ¶ 25.) She testified that, because she emerged from the bathroom to find her husband and children had left without her, she went to the car to drive home. (Sagebien SOMF ¶ 39; Sagebien SOMF, Ex. E, Tr. 227:13–24, 228:1–24, 229:1–4.)

6

On her drive away from the Sagebien residence, Defendant Locane hit the rear of a vehicle operated by Third Party Defendant Maureen Ruckelshaus ("TPD Ruckelshaus") while TPD Ruckelshaus was sitting at a red light on Cherry Valley Road near Route 206. (Pls.' SSF1 ¶ 56.) TPD Ruckelshaus got out of her car to speak with Defendant Locane and determined that Defendant Locane was intoxicated. (*Id.* ¶¶ 56–57.) TPD Ruckelshaus got back into her own car to follow Defendant Locane (*id.* ¶ 58) and later witnessed her hit two mailboxes before broadsiding Plaintiffs' vehicle. (*Id.*)

The fatal collision occurred as Defendant Locane continued traveling on Cherry Hill Road, where Plaintiff Fred Seeman was making a left hand turn into his driveway. (Bovenizer SOMF ¶ 26.) Up to .5 seconds before the accident, Defendant Locane was traveling at 53 mph in a 35 mph speed zone. (Pls.' SSF2 ¶ 9.) The accident caused severe injuries to Plaintiff Fred Seeman, fatal injuries to Helene Seeman, and emotional distress to Plaintiff Curtis Seeman. (*Id.* ¶¶ 5–7.) The New Jersey State Police Office of Forensic Sciences laboratory report revealed an ethyl alcohol level of $0.268 \pm .004$ wt/vol% for Defendant Locane on a blood sample collected at 10:48 PM the night of the accident, about two hours after she left the Sagebien barbecue. (*Id.* ¶ 39.) Defendant Locane was criminally charged with First Degree Aggravated Manslaughter and Third Degree Assault by Auto. (*Id.* ¶ 8.)

## **LEGAL STANDARD**

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it will "affect the outcome of the suit under

the governing law." *Id.* When deciding the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence; all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party." *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n.2 (3d Cir. 1983). In resolving a motion for summary judgment, a district court considers the facts drawn from "the pleadings, the discovery and disclosure materials, and any affidavits." *Curley v. Klem*, 298 F.3d 271, 276–77 (3d Cir. 2002) (internal quotations omitted). The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251–52 (1986).

Summary judgment must be granted against any party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. However, "[s]ummary judgment is inappropriate if an issue depends upon the credibility of witnesses, because credibility can best be determined only after the trier of fact observes the witnesses' demeanor." *Tunis Bros. Co. v. Ford Motor Co.*, 763 F.2d 1482, 1492 n.17 (3d Cir. 1985), *judgment vacated*, 475 U.S. 1105 (1986). Summary judgment is similarly inappropriate when a party's knowledge or other mental state is at issue, "because evaluating state of mind often requires the drawing of inferences from the conduct of parties about which reasonable persons might differ." *Justofin v. Metro. Life Ins. Co.*, 372 F.3d 517, 524 (3d Cir. 2004), *as amended* (Aug. 12, 2004).

## ANALYSIS

I.     Off-Broadstreet Theatre's Summary Judgment Motion

The claims against Off-Broadstreet Theatre assert liability on the basis of the New Jersey Social Host Act ("NJSHA"). Under the NJSHA, a social host is liable for damages when "[t]he

8

social host willfully and knowingly provided alcoholic beverages . . . to a person [of legal age] who was visibly intoxicated" and the "injury arose out of an accident caused by the negligent operation of a vehicle by the visibly intoxicated person . . . ." N.J.S.A. 2A:15-5.6. The dispositive issue here is whether Off-Broadstreet Theatre—the social host—knew that Defendant Locane was intoxicated when the Thicks served her alcohol at the cast party. Thus, the material facts are (1) when Defendant Locane became intoxicated and (2) if her state of intoxication was visible to and known by the Thicks when they gave her alcohol. Both of these facts are genuinely disputed. (*Compare* OBT SOMF ¶¶ 18–19, 33–34, *with* Sagebien Defs.' Suppl. Statement of Facts ¶¶ 1–4.) Moreover, these issues depend on the testimony of witnesses whose credibility is more appropriately evaluated by a jury. (*See* Sagebien Defs.' Resp. to OBT SOMF ¶¶ 13–22, 30–31.) They also relate to the Thicks' knowledge, a mental state issue better left for trial because it requires the drawing of inferences upon which reasonable people could differ. Resolving all doubts in favor of the nonmoving party, Third Party Defendant Off-Broadstreet Theatre's motion for summary judgment is denied.

II.  The Sagebien Defendants' Partial Summary Judgment Motion

The Sagebien Defendants moved for partial summary judgment on Plaintiffs' claim for punitive damages. To support a claim for punitive damages, a plaintiff must prove by clear and convincing evidence that the harm suffered resulted from the defendant's acts or omissions, which were committed either with actual malice or a wanton and willful disregard of foreseeable victims. N.J.S.A. 2A:15-5.12. To establish "wanton and willful disregard," Plaintiffs must show that the Sagebien Defendants committed "a deliberate act or omission with knowledge of a high degree of probability of harm and reckless indifference to the consequences." *Hottenstein v. City of Sea Isle City*, 977 F. Supp. 2d 353, 370 (D.N.J. 2013) (quoting *Smith v. Whitaker*, 734 A.2d

9

*of Sea Isle City*, 977 F. Supp. 2d 353, 370 (D.N.J. 2013) (quoting *Smith v. Whitaker*, 734 A.2d 243, 254 (N.J. 1999), *as amended*, 2013 WL 12152481 (D.N.J. Oct. 16, 2013)).

The material facts are whether the Sagebien Defendants knew that Defendant Locane was intoxicated and whether they reasonably believed she would not drive herself home. The first fact is not genuinely disputed; the Sagebien Defendants concede that they knew Defendant Locane was intoxicated by the end of the barbecue. (*See* Pls.' SSF1 ¶¶ 31–32, 35; Sagebien Defs.' Resp. to Pls.' SSF1 ¶¶ 31–32, 35.) However, whether they believed that she would not drive herself home—and whether what they believed evidences wanton and willful disregard—is genuinely disputed. (*Compare* Sagebien SOMF ¶¶ 35–36, *with* Pls.' Resp. to Sagebien SOMF ¶¶ 35–36.) Moreover, both facts depend on the Sagebien Defendants' mental states and the credibility of witness statements, which are more appropriately evaluated by the finder of fact at trial. Therefore, the Sagebien Defendants' motion for partial summary judgment is denied.

III. Defendant Bovenizer's Summary Judgment Motion

The claims against Defendant Bovenizer assert that he negligently entrusted his vehicle to Defendant Locane, that Defendant Locane was acting as Defendant Bovenizer's agent on the night of the accident, and that Plaintiffs are entitled to punitive damages.

First, under New Jersey's doctrine of negligent entrustment,

> "[t]he owner of an automobile may be liable for injury from the operation of that car placed in the hands of one he knows or ought reasonably to know is incompetent to operate it so that the owner ought reasonably to anticipate that in its operation injury will be done to others."

*Mead v. Wiley M. E. Church*, 72 A.2d 183, 186 (N.J. 1950). All parties agree that Defendant Locane was intoxicated at the time of the accident and had been entrusted with Defendant Bovenizer's vehicle, the 2007 Chevy Tahoe. The material fact is thus whether Defendant

10

Bovenizer knew or should have known that Defendant Locane was intoxicated when he left her at the Sagebien barbecue in possession of his car keys and with access to his car. This fact is genuinely disputed. (*Compare* Bovenizer SOMF ¶ 15, *with* Sagebien Resp. to Bovenizer SOMF ¶ 15, *and* Pls.' Resp. to Bovenizer SOMF ¶ 15, ECF No. 192). Moreover, because issues of mental state and the credibility of witness statements are more appropriately evaluated by the finder of fact at trial, the negligent entrustment claim does not warrant summary judgment.

Next, under an agency theory, "[a] driver's use of an owner's vehicle creates a rebuttable presumption that the driver is acting as the owner's agent." *Riungu v. Estate of Torres-Peralta*, 2007 WL 101988, at *2 (N.J. Super. Ct. Jan. 12, 2007) (citing *Harvey v. Craw*, 264 A.2d 448, 451 (N.J. Super. Ct. App. Div. 1970)). To rebut the presumption, the defendant must introduce un-contradicted testimony that a principal-agent relationship did not exist. *Id.* Here, all parties agree that Defendant Locane was driving Defendant Bovenizer's vehicle at the time of the accident. Therefore, it is Defendant Bovenizer's burden to establish that an agency relationship did not exist through uncontroverted evidence. Defendant Bovenizer asserts that the absence of testimony that Ms. Locane was acting as his agent satisfies this burden. (Def. Bovenizer's Br. at 16, ECF No. 182-1.) Given the Court's obligation on summary judgment motions to construe all inferences and doubts against the moving party, the Court cannot accept the use of this negative inference to meet a positive burden. Summary judgment is denied on the agency claims.

Finally, Defendant Bovenizer argues that Plaintiffs' punitive damages claims against him must be dismissed. As stated above, to secure punitive damages, a plaintiff must prove by clear and convincing evidence that the harm suffered resulted from the defendant's acts or omissions, which were committed either with actual malice or a wanton and willful disregard of foreseeable victims. N.J.S.A. 2A:15-5.12. To establish "wanton and willful disregard," Plaintiffs must show

that Defendant Bovenizer committed "a deliberate act or omission with knowledge of a high degree of probability of harm and reckless indifference to the consequences." *Hottenstein*, 977 F. Supp. 2d at 370 (quoting *Smith*, 734 A.2d at 254). Whether Defendant Bovenizer knew that Defendant Locane was intoxicated when he drove away from the Sagebien barbecue is a material and disputed fact which delves into Defendant Bovenizer's state of mind and relies on contradictory witness statements, whose credibility is most appropriately evaluated by the finder of fact. (*Compare* Bovenizer SOMF ¶ 15, *with* Sagebien Resp. to Bovenizer SOMF ¶ 15). Therefore, summary judgment is not warranted on the claim for punitive damages. Defendant Bovenizer's motion for summary judgment is denied in its entirety.

## CONCLUSION

For the reasons stated herein, all three motions are denied. An appropriate order will follow.

Date: 9/22/17

ANNE E. THOMPSON, U.S.D.J.